IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| SAMANTHA HUFTEN ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DR. MIGUEL CARDONA, ) <br> in his official capacity ) <br> as Secretary of the United States ) <br> Department of Education, ) <br> ) <br> and ) <br> ) <br> THE UNITED STATES DEPARTMENT ) <br> OF EDUCATION ) <br> ) <br> Defendants. ) | Case No. _____ <br><br> **COMPLAINT FOR** <br><br> **DECLARATORY AND** <br> **INJUNCTIVE RELIEF** |

**COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiff, Samantha Huften, brings this lawsuit to challenge the unlawful denial of their applications for federal student loan discharge by the U.S. Department of Education and Secretary Miguel Cardona ("Defendants").

2. The regulation that governs false certification discharges of a Direct Loan is found at 34 C.F.R. § 685.215(a)(1)(iii).

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this matter pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(c).

## PARTIES

5. Plaintiff Samantha Huften (hereinafter, "Plaintiff") resides in Grasonville, Maryland.

6. Defendant, Dr. Miguel Cardona, is the Secretary (hereinafter, the "Secretary") of the United States Department of Education. Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1070-1099d, charges the Secretary with the responsibility of administering and overseeing the federal student loan programs, including the Direct Loan program. He is named as a defendant in her official capacity.

7. Defendant, U.S. DEPARTMENT OF EDUCATION (hereinafter, the "Department") is an agency of the United States within the meaning of the APA. It is responsible for administering and adopting regulations that implement Title IV of the HEA. Collectively, both defendants are referred to herein as "Defendants."

## FACTUAL ALLEGATIONS

8. The Department is responsible for administering various loan and grant programs under Title IV of the Higher Education Act ("HEA"), which is the primary source of federal student aid. As a result, the Department has an obligation to ensure that these programs are not abused by for-profit and other educational institutions that rely on federal aid for the bulk of their revenue but fail to give their students adequate skills to obtain employment that will allow them to pay back their loan obligations.

2
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF

9. Student Borrowers of FFEL and Direct Loans can assert a right to a complete discharge of their federal student loans on the basis of their school's misconduct—i.e., a borrower defense.

10. Borrower defense arises in the backdrop of the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumer's Claims and Defenses (Holder Rule), 16 C.F.R. Pt. 433, which was promulgated in 1975. 40 Fed. Reg. 53506 (Nov. 18, 1975). The Holder Rule ensures that consumers are not forced to repay loans to a financer when a seller fails to provide the goods or services purchased.

11. The logic underlying the Holder Rule is that, as between "an innocent consumer, whose dealings with an unreliable seller are, at most, episodic, and a finance institution . . . the financer is in a better position both to protect itself and to assume the risk of a seller's reliability." Id. at 53509. By making financers liable for a seller's misconduct, the Holder Rule encourages lenders to avoid commercial dealings with disreputable sellers that defraud consumers.

12. Drawing upon the Holder Rule, a holder of a FFEL loan is, by regulation, "subject to all claims and defenses that the borrower could assert against the school with respect to that loan" if a sufficiently close relationship existed between the school and the lender. 34 C.F.R. § 682.209(g).

13. The Department's refusal to grant or deny borrower defenses exacerbates the harm to a borrower's credit that is caused by the very existence of the invalid student debt.

14. Plaintiff Samantha A. Huften resides at 110 Fox Run in Grasonville, MD 21638.

15. On or about April 1, 2011, Plaintiff enrolled in a one-year Medical Billing and Coding certificate program offered by American Career Institute (ACI), 8621 Robert Fulton Drive, Suite 180, Columbia, MD 21046.

16. ACI was a private, for-profit school, with campus locations in several Maryland counties.

17. Prior to Ms. Huften's enrollment in ACI, its admissions counselors told her there was an increasing demand in Maryland for work in the medical billing and coding field, and her earning potential would be approximately $35/hour upon graduation.

18. Prior to Ms. Huften's enrollment in ACI, its admission counselors also told her she would receive financial aid and would only be responsible for repayment of a private education loan for $2,500.

19. At the time Ms. Huften enrolled in the ACI Certificate Program, she was a single mother with a young child, and would not have enrolled in the program had she known the cost of the Certificate Program exceeded $2,500.

20. Prior to Ms. Huften's enrollment in ACI, its admissions counselors told Ms. Huften that the school's career counseling program would provide her with assistance with both finding an internship and finding permanent employment upon completion of the program, and they had "comprehensive career training programs" and guaranteed career placement. The school's career counseling program was terminated approximately mid-way through Ms. Huften's course of study.

21. Prior to Ms. Huften's enrollment in ACI, its admissions counselors told Ms. Huften that she would be eligible for an externship program during her course of study. However, no person from ACI's career services department was able to provide me with information about externships, despite her repeated requests. Ms. Huften eventually found

an externship on her own, which consisted of her assisting a private individual in that person's home office, and there were no prospects for long-term employment.

22. ACI admissions counselors also promised that Ms. Huften would become certified in medical billing and coding when she enrolled in their program. However, ACI never administered any type of examination for certification, despite their contention that the certification examination was included in the tuition and fees.

23. On or about March 30, 2012, Ms. Huften graduated from ACI.

24. ACI abruptly closed all campuses in Maryland and Massachusetts by 2013, with no warning to its students. ACI and was showing signs of financial instability in 2011-2012, when it failed to adequately staff many of its departments on the Columbia campus, including the career services department.

25. After Ms. Huften graduated from ACI, she was unable to secure a position involving medical billing and coding due to a shortage of employment in this field.

26. In 2013, Ms. Huften began working in a dentist's office as a receptionist, but has been unable to use her education in medical billing and coding, and her current rate of pay is well below the $35.00 per hour wage stated by ACI.

27. In or about 2014, Ms. Huften received communications from Nelnet concerning repayment of a Direct Loan. Ms. Huften believed this to be the private loan from ACI. At some point, she later learned that Nelnet believed she signed a Master Promissory Note for Federal Student Financial Aid, and borrowed a principal balance of $8,553.08. Ms. Huften contends that she never signed the MPN, or authorized anyone else to sign the MPN on her behalf.

28.     In 2014, Ms. Huften was contacted by American Profit Recovery, who was attempting to collect a debt for her private education loan. Ms. Huften paid the private loan in full in 2015.

29.     On or about April 5, 2016 Ms. Huften applied for a loan discharge through Nelnet and the Department based on false certification/unauthorized signature. This application was subsequently denied.

30.     On or about April 28, 2017, Ms. Huften applied for a loan discharge based on false certification/unauthorized signature through Nelnet. This application was denied.

31.     On or about January 23, 2018, Ms. Huften filed a comprehensive Borrower Defense Application through the U.S. Department of Education, which was subsequently forwarded to the Ombudsman Group Office (Case 00952852). No decision has been rendered and remains outstanding to this day.

32.     After ACI closed its campuses in Maryland in 2013, the Maryland Higher Education Commission ("MHEC") obtained all available student records, and is the only conservator of said records. Ms. Huften, through counsel, contacted MHEC, who confirmed that no student ledger cards are available for her account. The only record pertaining to Ms. Huften that is in the custody of MHEC is her school transcript.

33.     The Massachusetts Attorney General filed a complaint against ACI on grounds that ACI fraudulently misled students concerning financial aid, career counseling and employment prospects, at its campuses in Massachusetts and Maryland. *The State of Massachusetts v. The Career Institute, LLC*, 2013 WL 6429531 (Mass.Super.) (ACI falsified

documents to maintain its accreditation)[1]. On or about June 2, 2016, The Career Institute, LLC, the parent company of ACI, with other affiliated entities consented to entry of judgment (https://www.mass.gov/files/documents/2016/08/xa/aci-consent-judgment.pdf). Among other things, the consent judgment states:

    a.    ACI engaged in false and deceptive trade practices with respect to its students by falsifying documents to maintain its accreditation (¶¶23-44);

    b.    ACI failed to provide students with "tools and training they needed to obtain the promised employment (¶ 56);

    c.    ACI failed to provide course materials for which students paid (¶57-58);

    d.    ACI pushed students through to externship without required training (¶¶59-61).

34.    The harms suffered by students in *The State of Massachusetts v. The Career Institute, LLC*, are exactly the same as the harms suffered by Plaintiff Huften.

## FIRST CAUSE OF ACTION:
## DENIAL OF PLAINTIFF'S DISCHARGE APPLICATIONS - PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706

35.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

36.    The APA requires that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

---

[1] See also *Angela Smith, et al. v. ABC Training Center of Maryland, Inc.*, et al., filed in U.S. District Court for the State of Maryland, Case 1:13-cv-00306-JFM, Filed January 29, 2013 (describing ACI's financial insolvency during the time Ms. Hutten was enrolled).

37. The APA similarly requires that "prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding." 5 U.S.C. § 555(e).

38. And, the APA requires that "[e]ach agency . . . [g]ive an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

39. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" includes the "failure to act." 5 U.S.C. § 553(e).

40. A Court "shall – compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

41. A Court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

42. Plaintiff's application for false certification discharge, along with the evidence submitted with the application, satisfied the eligibility standards set forth in 20 U.S.C. § 1087(c) for discharge of the Direct Loans she obtained to attend ACI.

43. The denials of Plaintiff's individual application for school closure student loan discharge constitute final agency actions, as defined by 5 U.S.C. § 704, and are therefore reviewable under the APA.

44. Defendants' denials of Plaintiff's false certification discharge applications were arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the HEA, 20 U.S.C. § 1087(c), in violation of the APA, 5 U.S.C. § 706(2)(A).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF

45. Plaintiff asks this court to declare that Defendants' denials of her applications for discharge were unlawful, arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the HEA, 20 U.S.C. § 1087(c), in violation of the APA, 5 U.S.C. § 706(2)(A). Pursuant to the APA, 5 U.S.C. §§ 702 and 706(1) and (2)(A), Plaintiff further asks this court to reverse Defendants' denials of her applications for false certification discharge and compel Defendants to grant her application and:

   a. Cease collection efforts on Plaintiff's Direct Loans;
   b. Discharge the liability on Plaintiff's Direct Loans; and
   c. Grant Plaintiff all relief authorized by 20 U.S.C. § 1087(c)(1) and 34 C.F.R. § 685.215.

**SECOND CAUSE OF ACTION PURSUANT TO THE DECLARATORY JUDGMENT ACT, 28 U.S. C. §§ 2201-2202**

46. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

47. For the reasons set forth in the First Cause of Action, Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that under the HEA, 20 U.S.C. § 1087(c), the Department is obligated to discharge the Direct Loan(s) of a borrower and provide the relief authorized by 20 U.S.C. § 1087(c) and 34 C.F.R. § 685.215 whenever the borrower submits an application attesting to the fact that the borrower (or the student on whose behalf the parent borrowed) is unable to complete the program in which the student is enrolled due to the closure of the institution.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment and order for relief as follows:

1. Declaring that Defendants' denials of Plaintiff's student loan discharge applications were arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the HEA, 20 U.S.C. § 1087(c), in violation of 5 U.S.C. § 706(2);

2. Reversing the Department's final decisions denying Plaintiff's false certification discharge applications pursuant to 5 U.S.C. § 706(2);

3. Compelling the Secretary, pursuant to 5 U.S.C. § 706(1), to:

   a. Cease collection efforts on Plaintiff's Direct Loans;

   b. Discharge the liability on Plaintiff's Direct Loans; and

   c. Grant Plaintiff all relief authorized by 20 U.S.C. § 1087(c)(1) and 34 C.F.R. § 685.215;

4. Declaring that under the HEA, 20 U.S.C. § 1087(c), the Department is obligated to discharge the Direct Loan(s) of a borrower and provide the relief authorized by 20 U.S.C. § 1087(c) and 34 C.F.R. § 685.215 whenever the borrower submits an application attesting to attesting to the fact that the borrower (or the student on whose behalf the parent borrowed) is unable to complete the program in which the student is enrolled due to the closure of the institution.

5. An award of reasonable attorney fees.

Respectfully submitted,

By:   /s/ Derek A. Hills
Derek A. Hills (Bar No. 19925)
The Law Office of Derek A. Hills, LLC
PO Box 3084
Easton, MD 21601
Telephone: (443) 239-4626
dhills@dahlawoffice.com
*Pro Bono Counsel for Plaintiff*

10
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF